**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 1:25-cr-00174-RC** |
| | : | |
| **MICHELLE SHROPSHIRE,** | : | **Sentencing: August 4, 2026** |
| | : | |
| **Defendant.** | : | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

For a period of approximately four years, defendant Michelle Shropshire was the mastermind of a far-reaching conspiracy in which she, Harlisha Jones,[1] and possibly dozens of other Washington Metropolitan Area Transit Authority ("WMATA") employees stole hundreds of thousands of dollars from American Family Life Assurance Company ("AFLAC"), an insurance company based in Georgia.  Shropshire orchestrated her scheme by submitting fraudulent disability and health care claims to AFLAC on behalf of herself and other WMATA employees, claiming injuries that they never had, and by supporting those fraudulent claims with forged doctors' signatures and phony claim forms, medical records, and other supporting documentation that Shropshire herself created.  All the while, Shropshire and her co-conspirators continued to work for WMATA and collected their regular paychecks during the periods they were purportedly disabled.  In exchange, Shropshire's co-conspirators paid her approximately 20% of their ill-gotten gains obtained from AFLAC in the form of kickbacks as payment for Shropshire's services.

---

[1] Shropshire and Jones were indicted as codefendants on June 12, 2025.  Shropshire and Jones have each since pleaded guilty to Count One of the Indictment, which is Conspiracy to Commit Mail Fraud, Wire Fraud, and Health Care Fraud, 18 U.S.C. § 1349.  Jones is scheduled to be sentenced on August 6, 2026.

As for the breadth of Shropshire's scheme, there is no question that she provided her criminal services to dozens of WMATA employees.   But even accounting for just herself, Jones, and the handful of other WMATA employees included in the Indictment (ECF No. 2) and the Statement of Offense (ECF No. 22) accompanying Shropshire's Plea Agreement (ECF No. 21), Shropshire was directly responsible for defrauding AFLAC out of at least $362,035.14 over a period of almost four years.[2]   Based just on those specifically-identified claims, the Government estimates that Shropshire herself personally profited in the amount of approximately $80,520.36.[3] But again, the true numbers are likely staggering by comparison.

If the Court agrees with the sentencing guidelines calculations proffered by the Government below, as verified in the Final Presentence Investigation Report ("PSR"), then Shropshire's sentencing guidelines range is 41 to 51 months.   Therefore, to reflect the seriousness of Shropshire's offense, her repeated criminal acts over many years, and her recruitment of other WMATA employees into her scheme, and to deter her and others from engaging in similar behavior in the future, the Government recommends that the Court sentence Shropshire to a within-guidelines term of 41 months of imprisonment, followed by three years of supervised release.   The Government also requests that the Court order Shropshire to pay mandatory restitution in the amount of $153,432.04 to the victim AFLAC.   Finally, pursuant to 18 U.S.C. § 981(a)(1)(C) and

---

[2] The earliest fraudulent claim in the Statement of Offense was paid on or about March 3, 2020, for Person 2, and the latest fraudulent claim was paid on or about January 16, 2024, for Jones. Similarly, the Indictment identifies the dates of Shropshire's scheme to have spanned at least from in or about March 2020 to January 2024.   ECF No. 2 at ¶ 14.

[3] This was determined by calculating 20% of the $351,893.47 in claims that Shropshire submitted for others, which is $70,378.69, and adding to that the $10,141.67 in fraudulent claims that Shropshire submitted for herself.

2

28 U.S.C. § 2461(c), and because Shropshire has spent the proceeds of her fraud scheme, the Court should impose an $80,520.36 criminal forfeiture money judgment in favor of the United States. Such a sentence would be sufficient but not greater than necessary to comply with the purposes of sentencing.

## I.    Factual and Procedural Background

As described in greater detail in the Indictment and the Statement of Offense, at all relevant times, Shropshire was employed as a Train Operator by WMATA.   Over a period of nearly four years, Shropshire repeatedly submitted false and fraudulent insurance claims to AFLAC for which AFLAC paid Shropshire and her numerous co-conspirators more than $360,000.   In return for her services, each co-conspirator paid a kickback to Shropshire of approximately 20% of the value of each fraudulent claim.

Shropshire and her co-conspirators knew that each claim she submitted was completely fake.   None of the co-conspirators were disabled; the supporting documents that Shropshire submitted with each claim, including but not limited to falsified medical records and forged doctor signatures, were fabrications; and the co-conspirators continued to work for WMATA and collected their regular paychecks during the periods they were purportedly disabled.

On June 12, 2025, Shropshire was indicted with one count of Conspiracy to Commit Mail Fraud, Wire Fraud, and Health Care Fraud, 18 U.S.C. § 1349; one count of Health Care Fraud, 18 U.S.C. § 1347; two counts of Wire Fraud, 18 U.S.C. § 1343; one count of Mail Fraud, 18 U.S.C. § 1341; and one count of Aggravated Identity Theft, 18 U.S.C. § 1028A.   ECF No. 2.   The Indictment also contained a forfeiture allegation.   *Id*. at 17-18.

On January 23, 2026, Shropshire pleaded guilty to Count One of the Indictment, charging her with Conspiracy to Commit Mail Fraud, Wire Fraud, and Health Care Fraud.   Her sentencing hearing is scheduled for August 4, 2026.

## II.    U.S. Sentencing Guidelines

For the reasons stated herein, the Government submits that the appropriate guidelines calculations are as follows:

| | | |
|---|---|---|
| U.S.S.G. § 2B1.1(a)(1) | Base Offense Level | 7 |
| U.S.S.G. § 2B1.1(b)(1)(G) | Loss Amount +$250,000 | +12 |
| U.S.S.G. § 2B1.1(b)(10)(C) | Sophisticated Means | +2 |
| U.S.S.G. § 3B1.1(a) | Organizer/Leader, Five or More Participants | +4 |
| U.S.S.G. § 3E1.1 | Acceptance of Responsibility | -3 |
| | **Total** | **22** |

In the Plea Agreement, the parties agreed with the foregoing guidelines calculations for base offense level, loss amount, and acceptance of responsibility.   Shropshire reserved the right to argue at sentencing that sophisticated means should not apply, that no aggravating role enhancement should apply, and that the zero-point offender reduction under U.S.S.G. § 4C1.1 should apply.   ECF No. 21 at 3-4.

The PSR submitted by the U.S. Probation Office concurs with the Government's guidelines calculations, including that the sophisticated means and aggravating role enhancements should apply, and that the zero-point offender reduction should not apply.   ECF No. 37 at ¶¶ 18, 23-34; *id.* at 21-22.   The government will discuss below why these two sentencing guidelines

enhancements apply to Shropshire's guidelines calculation as well as how they factor into the Court's consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a).

The PSR writer also concluded (and the Government agrees) that Shropshire has a criminal history score of zero putting her in Criminal History Category I.   *Id.* at ¶ 37.   At Criminal History Category I and total offense level of 22 (as calculated by the Government and adopted by the PSR writer), the recommended guideline imprisonment range is 41 to 51 months, with a fine range of $15,000 to $150,000.

As the parties noted in the Plea Agreement, Conspiracy to Commit Mail Fraud, Wire Fraud, and Health Care Fraud carries a maximum sentence of twenty years of imprisonment; a fine of $250,000 or twice the pecuniary gain or loss of the offense, pursuant to 18 U.S.C. § 3571(b)(3), (d); a term of supervised release of not more than three years, pursuant to 18 U.S.C. § 3583(b)(2); mandatory restitution under 18 U.S.C. § 3663A; and an obligation to pay any applicable interest or penalties on fines and restitution not timely made.   ECF No. 21 at 1.

### III.    The 18 U.S.C. § 3553(a) Factors Support a Sentence of Incarceration

The Court must impose a sentence that is sufficient but not greater than necessary to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational treatment.   18 U.S.C. § 3553(a)(2).   The Court also must consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the sentencing range under the guidelines, any relevant policy statements, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to the victims.   18 U.S.C. § 3553(a)(1)-(7).

### A.    The Nature and Circumstances of the Offense and the Need for the Sentence to Reflect the Seriousness of the Offense

Shropshire's fraudulent scheme was not a one-off event nor a crime of opportunity—it was a deliberate concerted offense, committed dozens of times over a period of many years.   And she was the mastermind of a wide-ranging conspiracy that ensnared numerous—possibly dozens—of other WMATA employees.   Because of Shropshire's willingness to facilitate this fraud against AFLAC, no fewer than *six* other WMATA employees[4] have now pleaded guilty to felony Health Care Fraud offenses before this very Court, each of whom acknowledged Shropshire's direction and participation in submitting claims to AFLAC on their behalf.

And there is no question that Shropshire was the mastermind of the scheme, such that the aggravating role enhancement proposed by the Government and the PSR writer is warranted.   It was Shropshire who prepared and submitted the fraudulent claim forms to AFLAC on behalf of other WMATA employees.   It was Shropshire who fabricated medical treatment records and excuse notes to support those phony claims.   It was Shropshire who forged the signatures of real doctors on those documents.   It was Shropshire who created and submitted additional forged records to AFLAC when she deemed it necessary to support one of her claims.   For example, one of the fraudulent claims that Shropshire prepared and submitted on behalf of Jones claimed that Jones had suffered neck and back injuries when she was a passenger in a purported car accident on August 16, 2023.   *See* Exhibit A at 2-3.   To better sell the lie, Shropshire obtained a State of

---

[4] Those individuals are Harlisha Jones, Brady Turner, Selethia Blake, Sharon Washington, Lushawn Foreman, and Margot Jackson.   Roland Harris also pleaded guilty as a result of the Government's investigation, but he maintained that he submitted the fraudulent claims to AFLAC himself, without Shropshire's assistance.

Maryland Motor Vehicle Crash Report for a car accident that Jones actually *had* been involved in on October 8, 2022, changed the crash dates in the report to match the phony August 16, 2023, injury date in the claim forms, and then submitted the altered crash report to AFLAC.  *Compare* Exhibit A at 17-19 (altered report) to Exhibit B (original report).   And finally, it was Shropshire who received a kickback from each of her accomplices.

If there were still any question as to who was the true mastermind of the scheme, one need look no further than the text exchange between Shropshire and Jones when AFLAC asked for an accident report before processing the phony claim.   On January 4, 2024, Jones informed Shropshire that AFLAC was requesting a copy of the accident report.  *See* Exhibit C at 1-2. Shropshire proceeded to lament that they would "have to make an accident report damn[,]" before instructing Jones to "call and talk to a live person[.]"  *Id.* at 2.   When Jones asked Shropshire what she should say, Shropshire instructed Jones to tell AFLAC that she was not the driver of the vehicle involved in the accident,[5] and to ask if they still needed a police report.  *Id.* at 3.   When Jones said that AFLAC still needed the report, Shropshire asked Jones to send her a copy of the original, genuine police report so that Shropshire could "change the dates[.]"  *Id.*   Finally, after Jones sent the original police report to Shropshire, Shropshire responded that "I should be able to have fun with this[,]" and added that "[t]hey gonna unass that money[.]"  *Id.* at 4.

The other WMATA employees who pleaded guilty also acknowledged that this was *Shropshire's* scheme.   In the Statements of Offense accompanying their Plea Agreements, each co-conspirator stated that they "knew [Shropshire] as someone who could help WMATA

---

[5] Jones *was* the driver.

employees obtain additional money by submitting disability claims on their behalf[,]" that Shropshire agreed to submit fraudulent claims on their behalf, and that they agreed to pay Shropshire a portion of the insurance payout once each claim was approved and funded.  *See, e.g.*, 1:25-cr-00119-RC, ECF No. 5.   Shropshire is the sole common denominator across each charged case.   Shropshire was the individual dictating the manner and means by which the scheme was conducted, and she was the individual who collected accomplices to the scheme.   At the end of the day, this scheme would not have existed at all but for her actions, and the aggravating role enhancement under U.S.S.G. § 3B1.1(a) is appropriate.   And, because Shropshire's guidelines calculation should include the aggravating role enhancement under § 3B1.1(a), she is ineligible for the "zero-point offender" reduction under § 4C1.1.   *See* U.S.S.G. § 4C1.1(a)(10).

A meaningful sentence of incarceration is also warranted because of the sophisticated means that Shropshire employed to ensure that AFLAC accepted her fraudulent claims, and to avoid detection for so many years.   "For purposes of subjection (b)(10)(C) 'sophisticated means' means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense."   U.S.S.G., § 2B1.1, Application Note 9(B).

As discussed above, this was not a simple scheme.   Shropshire's scheme involved dozens of other accomplices.   She fabricated medical records and physicians' forms complete with made up injuries, diagnosis codes, and treatment plans.   She obtained and used the names, taxpayer identification numbers, and forged signatures of *real* doctors to craft the false documentation to support the purported disability claims as well as conceal the scheme.   Looking through the documents that Shropshire submitted in support of just *one* fraudulent claim tells the tale.   *See* Exhibit A; *see also United States v. Ghertler*, 605 F.3d 1256, 1267 (11th Cir. 2010) ("There is no

requirement that each of a defendant's individual actions be sophisticated in order to impose the enhancement.   Rather, it is sufficient if the totality of the scheme was sophisticated."); *cf. United States v. Milligan*, 77 F.4th 1008, 1013 (D.C. Cir. 2023) ("[S]everal of our sister circuits agree that the enhancement can apply to conduct less sophisticated than the list articulated in the application note [to the commentary to the sentencing guidelines].").   Shropshire's scheme went undetected for almost four years due to its design and her proficiency in running it.   Thus, the "sophisticated means" enhancement under U.S.S.G. § 2B1.1(b)(10)(C) applies.

**B.     The Need to Promote Respect for the Law and to Deter the Defendant and Others from This Type of Criminal Conduct**

A guidelines sentence of incarceration for Shropshire's planned, deliberate, years-long fraud scheme is appropriate to promote respect for the law and to deter other would-be fraudsters, particularly because, as this Court has previously noted, health care fraud is particularly easy to commit and difficult to detect.   The requested sentence would also reflect the fact that Shropshire ensnared so many other WMATA employees into her scheme, and send an important message to other WMATA employees, employees of other local and federal government entities, and the wider community, that there are consequences for crimes like those Shropshire committed.   A guidelines-compliant sentence will inform other would-be health care fraudsters that there are consequences to committing those crimes and that those who steal from health insurance entities and other health care providers will be met with significant and just consequences.

**C.     The History and Circumstances of the Defendant**

Shropshire is a capable person who held a high-paying job with WMATA for many years and who successfully ran her fraud scheme for an extended period with great success.   There are no mitigating circumstances in Shropshire's history that would explain this offense in any way.

9

Rather, her conduct appears to have been driven by simple greed and selfishness, and a complete disregard for the potential consequences not only to herself, but to the many other WMATA employees with whom she conspired.

### D.    The Need to Avoid Unwarranted Sentencing Disparities

Concerning unwarranted sentencing disparities, a sentencing court "necessarily g[ives] significant weight and consideration to the need to avoid unwarranted disparities" by "correctly calculat[ing] and carefully review[ing] the Guidelines range." *Gall v. United States*, 552 U.S. 38, 54 (2007). "[I]mposing a within-guidelines sentence is the surest way to avoid unwarranted disparities." *United States v. White*, 737 F.3d 1121, 1145 (7th Cir. 2013).

The Government recognizes that, to date, the Court has sentenced the other WMATA employees ensnared in Shropshire's scheme to probationary sentences. However, for the reasons stated above, Shropshire herself is not similarly situated to those other individuals. Moreover, her guidelines range is much higher than the ranges of those other defendants, all of whom fell within the lowest possible sentencing range in Zone A. Shropshire, to the contrary, is squarely within Zone D, and as such the Guidelines suggest that she serve at least the minimum term of imprisonment. *See* U.S.S.G. § 5C1.1(f).

Finally, according to the PSR, 96% of defendants fitting Shropshire's circumstances received sentence of imprisonment, with the average length of imprisonment imposed being 33 months and the median length of imprisonment imposed being 35 months. *See* ECF No. 37 at ¶ 95. For all of the reasons stated herein, not only does the Government believe that a meaningful period of incarceration is warranted, but we are requesting a guidelines-compliant sentence of at least 41 months.

### E.    Restitution and Forfeiture

The charged crime is an offense against property under Title 18, and thus falls under the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A.   As a result, the Court must order that "the defendant make restitution to the victim of the offense[s]."   18 U.S.C. § 3663A(a)(1). Specifically, the Government requests Defendant be ordered to pay restitution in the amount of $362,035.14 to AFLAC.[6]   *See* 18 U.S.C. § 3663A (requiring courts to order restitution in the full amount of victim's loss).   That is also the amount of restitution agreed to by the parties in the Plea Agreement.   ECF No. 21 at 8.

Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) the Government also requests the Court impose a forfeiture money judgment in the amount of $80,520.36, which represents the proceeds Shropshire received as part of her fraud scheme.   *See supra* n.3.   A proposed final order of forfeiture is attached to this memorandum as Exhibit D.   The Government agreed to have the money judgment be determined at sentencing, but informed Shropshire's counsel that it intended to seek an amount greater than the $10,141.67 that Shropshire received for the fraudulent claims she submitted on her own behalf.   To that end, in the Plea Agreement Shropshire agreed to forfeit "any property constituting, or derived from, proceeds [she] obtained

---

[6] The Government requests that restitution be ordered to be paid jointly and severally in the following manner: $58,750.00 as to Harlisha Jones; $35,673.33 as to Sharon Washington; $50,698.34 as to Selethia Blake; $45,673.33 as to Brady Turner; $81,206.81 as to Lushawn Foreman; and $47,686.66 as to Margot Jackson.

11

directly or indirectly, as the result of the offense to which she is pleading guilty, which amount will be determined at sentencing but defendant agrees is at least $10,141.67."   ECF No. 21 at 9.

The Government submits that its calculation of forfeiture based on Shropshire receiving a 20% kickback for each fraudulent claim she submitted on behalf of other WMATA employees constitutes a fair calculation of the proceeds Shropshire obtained as part of her fraud scheme to which she pleaded guilty.   As an example, as alleged in the Indictment and as represented in the following chart, Shropshire received kickbacks of approximately 19.4% from Jones for the fraudulent claims that Shropshire submitted on Jones's behalf, with each individual kickback being approximately 20% of the corresponding claim payment.

| Claim Number | Claim Payment Amount to from AFLAC to Jones | Kickback Amount from Jones to Shropshire |
|---|---|---|
| 029476124 | $12,380.00 | $2,400 |
| 032388615 | $10,000.00 | $2,000 |
| 033229279 | $2,025.00 | $400 |
| 037265413 | $10,266.67 | $2,000 |
| 041175411 | $13,105.00 | $2,400 |
| 045648793 | $10,973.33 | $2,200 |
| **Total** | $58,750.00 | $11,400.00 |

Calculating a 20% kickback from other defendants who have pleaded guilty to the scheme and admitted Shropshire's involvement in submitting their claims, the Government calculates Shropshire received at least $80,520.36 in fraud proceeds and the Court should impose a criminal forfeiture money judgment in that amount.

**CONCLUSION**

WHEREFORE, for the foregoing reasons, the Court should sentence Shropshire to a term of 41 months of imprisonment, followed by three years of supervised release, order restitution in the amount of $362,035.14, and enter an order of forfeiture of a criminal money judgment in the amount of $80,520.36.   This guidelines sentence is appropriate given all the § 3553(a) factors here.   Such a sentence would be sufficient but not greater than necessary to achieve the purposes of sentencing.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney
for the District of Columbia

By:      _/s/ Brian P. Kelly_  __
BRIAN P. KELLY (D.C. Bar No. 983689)
DIANE G. LUCAS (D.C. Bar No. 443610)
Assistant United States Attorneys
United States Attorney's Office
District of Columbia
601 D Street NW
Washington, DC 20530
(202) 252-7503 (Kelly)
(202) 252-7724 (Lucas)
Brian.Kelly3@usdoj.gov
Diane.Lucas@usdoj.gov